## Appeal of ART METAL CONSTRUCTION CO.

Docket No. 4943.   Decided July 29, 1926.

1. Value of patent determined on the evidence.
2. The taxpayer is entitled to have its taxes assessed under section 210 of the Revenue Act of 1917, on the ground that its invested capital can not be determined.

*John Lord O'Brian, Esq.*, for the petitioner.
*J. K. Moyer, Esq.*, for the Commissioner.

Before Phillips and Trammell.

This is an appeal from the determination of a deficiency in income and profits taxes for 1917 in the amount of $6,488.54. The deficiency results from reduction of invested capital and the disallowance of an amount claimed for the exhaustion of a patent for 1917. The taxpayer also claimed the benefit of having its taxes assessed under section 210 of the statute, on the ground that the invested capital could not be determined.

## FINDINGS OF FACT.

The taxpayer is a Massachusetts corporation organized in 1899, with its principal office at Jamestown, N. Y. Its business has increased from year to year until 1917, when it employed approximately 1,100 persons, of whom 25 to 35 were women.

The taxpayer manufactures metal and wooden, furniture, principally office furniture and furniture for libraries. The manufactured articles were partly covered by patents. Some of the patents covering the manufactured articles were obtained by purchase and others, including the patent on the Amco suspension device, which was issued on April 14, 1908, were developed in its own plant by its employees. The Amco suspension patent was taken out in the name of its employees who developed it and was assigned by them to the taxpayer in 1908. The cost of developing this patent was charged to expense, but on account of the method of bookkeeping and inadequate records the amount of expense incurred in developing the patent can not be determined. In 1917 another patent was issued on the Amco suspension device, slightly improving it. The total patent account appeared on the books of the taxpayer on February 28, 1913, at $250,000, and on January 1, 1917, at $175,000.

The net profits for five years prior to 1908, when the patent was obtained, and for five years subsequent to 1908, as they appear on the books of the taxpayer, were as follows:

| | | | |
|---|---|---|---|
| 1903 | $122, 078. 87 | 1908 | $141, 550. 00 |
| 1904 | 186, 859. 94 | 1909 | 121, 158. 24 |
| 1905 | 172, 558. 85 | 1910 | 39, 279. 80 |
| 1906 | 575, 748. 43 | 1911 | 148, 461. 90 |
| 1907 | 412, 708. 87 | 1912 | 390, 298. 20 |

The Amco suspension patent covers an invention which permits the free movement of filing drawers, etc., in filing cabinets so as to reduce the amount of friction, and at the same time simplifies the construction by doing away with rollers mounted on studs which wear out and work loose. The invention also permits the drawer to be extended at full length without dropping or sagging. Prior to 1908 there was used on metal cabinets what is known as a pan suspension. There was considerable friction in this suspension device and it did not permit the drawer to be drawn out at full length while in use. Several years were required to develop a new suspension which would stand up with the metal filing case. The taxpayer was the original manufacturer of metal furniture and was the largest manufacturer at the time of the development work on the new suspension device. The Amco suspension was the most advanced device for its purpose at the time it was patented and in 1913.

This suspension system has been a great factor in the taxpayer's commercial history. It has made possible the manufacture of certain

things which had previously been found impracticable. It was only through it that the vertical filing system for papers as large as 24 inches by 18 inches was made practicable. It also saved considerable space. The Amco suspension is also more durable than the pan suspension. The cost of the Amco suspension is slightly in excess of the cost of the pan suspension. The Amco suspension costs $1.39 per pair, while the pan suspension costs 35 cents per pair, making a set of four pairs of Amco suspension devices cost $5.56, while the cost of four pairs of the pan suspension is $1.40, the increased cost of the Amco suspension over the pan suspension being $4.16. The selling price, however, of the filing cases with Amco suspension was $38.00, while the price of the same filing case without above suspension was $32.50, making an increase in price due to the Amco system of $5.50, making a profit per case assignable directly to the Amco suspension of $1.34.

As soon as the Amco suspension was patented, it was featured in catalogues and otherwise by the taxpayer and has been an outstanding feature since the issuance of the patent.

The sets of stock goods manufactured by the taxpayer from 1908 to 1913 are shown below:

| | |
|---|---:|
| 1908 | 11, 650 |
| 1909 | 15, 956 |
| 1910 | 23, 108 |
| 1911 | 44, 340 |
| 1912 | 38, 922 |
| 1913 | 58, 416 |

After the acquisition of the Amco patent and prior to March 1, 1913, the taxpayer was establishing new markets for its goods. It had to overcome opposition to metal furniture which, to some degree, was caused by its imperfections, which the Amco suspension overcame. On March 1, 1913, the outlook for the future was bright. The indications were that there would be a continuous increase in its business due largely to the use of the Amco suspension. The value of the patent on March 1, 1913, was $225,000.

The Commissioner used as a basis for computing the deduction on account of the exhaustion of depreciable assets other than patents for 1917, the following values:

| | |
|---|---:|
| Land | $61, 070. 75 |
| Buildings | 454, 989. 58 |
| Power plant | 70, 792. 42 |
| Light, heat, etc | 23, 779. 93 |
| Machinery | 172, 981. 63 |
| Factory fixtures | 86, 375. 05 |
| Special tools, etc | 162, 362. 11 |
| Office furniture and fixtures | 74, 529. 41 |
| Forges, ovens, etc | 9, 770. 54 |
| Patterns of stock | 10, 417. 83 |
| | 1, 127, 069. 15 |

Taxpayer and the Commissioner have stipulated that the value of the assets on January 1, 1917, was $1,240,110.43, instead of $1,127,-069.15; that depreciation for 1917 should be computed on the basis of the above amount, less value of land; that $194,213.84 should be restored to invested capital on account of the Commissioner's adjustment for insufficient depreciation for prior years; and that invested capital as computed by the Commissioner should be reduced $81,172.56 on account of appreciation of assets by the taxpayer.

The taxpayer's buildings were of brick, except three frame buildings, which were 27, 23 and 20 years old, respectively, and were in good condition owing to extraordinary repairs. Three men were engaged almost exclusively in repairing buildings and floors. Their wages and the material used were charged to expense.

The rates claimed for depreciation by the taxpayer and the rates allowed by the Commissioner on the disputed items are as follows:

|  | Allowed by Commissioner | Claimed by taxpayer |
|---|---|---|
|  | *Per cent* | *Per cent* |
| Buildings: |  |  |
| Brick | 2 | 2 |
| Frame | 2 | 4 |
| Power plant | 5 | 10 |
| Machinery | 5 | 7½ |
| Factory fixtures | 5 | 7½ |
| Patterns of stock | 5 | 10 |

The power plant consisted of four 150-horsepower McEwen tubular boilers, two boiler feed pumps, one Cochran open-feed water heater and two return feed pumps, one 250-horsepower Alburger tandem gas engine directly connected with a 175-kilowatt Crockwheeler generator, one 150-horsepower twin cylinder gas engine belted to a 100-kilowatt generator, one 50-horsepower steam engine, an Ingersol Randall air compressor, an exciter for alternating current generator, and two high pressure air tanks used for starting gas engines.

The machinery is used for stamping, forming and blanking cold steel. The greater part of the machinery consists of knotching presses and forming presses; also welding equipment and forming machinery, shears, brakes and bending brakes.

Factory fixtures consisted of benches, racks, bins, boxes for carrying material, and trucks.

Patterns of stock consisted of metal and wood patterns, 65 per cent of which were metal.

In 1916 and 1917 a program was carried out by the taxpayer to put the plant assets in good condition. Old machines were repaired and new equipment bought, particularly welding equipment.

The Commissioner reduced invested capital by $118,589.68, on the ground that insufficient depreciation had been taken in prior years.

TRAMMELL: The stipulation of the taxpayer and the Commissioner set out in the findings of fact disposes of the asset values on January 1, 1917, the amount upon which depreciation should be computed, and, in part only, the amount to be restored to invested capital on account of the Commissioner's adjustment for depreciation for prior years.

The questions in dispute are: (1) The amount taxpayer is entitled to take as deductions from gross income for 1917 on account of the exhaustion, wear and tear of certain assets; (2) whether depreciation taken by the taxpayer in prior years should be increased in determining invested capital; and (3) the March 1, 1913, value of the Amco suspension patent on which the deduction on account of the exhaustion thereof should be computed.

The rates at which depreciation has been computed by the Commissioner on various assets and the rates claimed by the taxpayer are set out in the findings of fact. The evidence submitted by the taxpayer in support of the rate of 4 per cent on frame buildings consisted principally of the testimony of its master mechanic, who stated that the principal frame buildings were known as buildings 3, 4 and 5; that in 1917 the oldest building would be 27 years old, the others 23 and 20; that extraordinary precaution was taken in repairing buildings, and in his opinion the rate of depreciation should be 5 or 6 per cent per annum. The opinion of this witness is inconsistent with demonstrated facts, since the buildings are all over 20 years old and in good repair. The evidence discloses that all buildings were carried in one account and no segregation was made as to the amount of brick and frame buildings separately. It may be that the Commissioner considered the character, construction, use and other relevant facts relating to the frame buildings when he determined that a composite rate of 2 per cent on all buildings was proper. Even if we were of the opinion from the evidence that the frame buildings taken alone suffered exhaustion at a greater rate than that allowed by the Commissioner, the taxpayer has not established that the composite rate on all buildings taken together is not fair and reasonable.

With respect to the deduction on account of the exhaustion, wear and tear of the power plant, machinery, factory fixtures and patterns, we are not convinced from the evidence that such assets had a shorter useful life than that determined by the Commissioner.

No evidence was introduced with respect to depreciation for prior years further than that the Commissioner determined that the taxpayer had not made adequate deductions therefor. If the taxpayer actually charged betterments and replacements to expense so as to

practically balance proper deductions for depreciation, we have been furnished no evidence thereof. The taxpayer claims that the depreciation determined for prior years is excessive and that determined for the taxable year is inadequate. The Commissioner appears, however, to have used the same rate throughout. In the absence of any evidence we must approve the determination of the Commissioner with respect to the depreciation for prior years.

The second issue involved is the value of the Amco suspension patent for depreciation purposes. The taxpayer contends that this patent had a March 1, 1913, value of $600,000, on which the deduction for exhaustion, wear and tear should be computed for 1917. The taxpayer had other patents in addition to the Amco suspension patent and all were carried on the books of the taxpayer at $250,000 at March 1, 1913.

The bookkeeping entries are not conclusive as to values which are shown therein. They are only evidentiary at most and may be overcome by evidence. There is no evidence that the bookkeeping entries even pretended to reflect actual values or costs as they existed on that date. If the assets appearing on the books had increased in value since the date of acquisition the taxpayer is entitled to revalue them as of March 1, 1913, for the purpose of taking a deduction on account of the exhaustion, wear and tear thereof.

In determining what the March 1, 1913, value was we should consider all the facts and circumstances as they existed at that time, including the reasonable prospects for the future. It is not necessary to set out here the facts which are contained in the foregoing findings of fact, but from a consideration of all the facts, including the testimony of persons who were qualified to express their opinions with respect thereto, we are of the opinion that the Amco suspension patent, on March 1, 1913, had a value of at least $225,000, on which the taxpayer should be allowed to take a deduction on account of the exhaustion.

Since the invested capital can not be determined due to the fact that the cost of the acquisition of the patent herein referred to and the other patents of the taxpayer can not be determined, the tax should be computed under the provisions of section 210 of the Revenue Act of 1917, and the tax so determined by the Commissioner will be considered final.

*Order of redetermination will be entered on 10 days' notice, under Rule 50.*